# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

————————————————————

UNITED STATES OF AMERICA,

        v.

JULIO VIANA,
        Defendant,

————————————————————

**CRIMINAL ACTION
NO. 05-1672-CBS**

————————————————————

UNITED STATES OF AMERICA,

        v.

MARIO VIANA,
        Defendant,

————————————————————

**CRIMINAL ACTION
NO. 05-1673-CBS**

## MEMORANDUM OF PROBABLE CAUSE AND
## ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION
### July 13, 2004

**SWARTWOOD, C.M.J.**

    I. <u>Nature of the Offense and the Government's Motion</u>

These are two separate Criminal Complaints which were filed on June 22, 2005, and charge two brothers, Julio Viana ("Julio") (05-1672-CBS) with operating an unlicenced money transmitting business and structuring financial transactions to evade reporting requirements in violation of 18 U.S.C. §1960(a) and 31 U.S.C. §5324(a)(3) and Mario Viana ("Mario")(05-1673-CBS) with knowingly and in reckless disregard, bringing aliens into the United States and knowingly conducting, controlling, managing, supervising,

directing and owning all or part of an unlicenced money transmitting business, in violation of 8 U.S.C. §1324(a)(2)(B)(ii) and 18 U.S.C. §1960(a).

At Julio's and Mario's initial appearance on June 28, 2005, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §3142(f)(2)(A)(risk of flight).

On June 30, 2005, a consolidated probable cause/detention hearing was held and at that hearing, both Julio and Mario waived their right to a probable cause hearing but proceeded with a hearing on the Government's motion for detention which was concluded on July 7, 2005.

Derek M. Dunn, Special Agent with the United States Immigration and Customs Enforcement ("ICE"), testified at the detention hearing for both Julio and Mario and was cross-examined by their counsel.

## II. Facts

### (A) Julio Viana

1. Julio and his brother, Mario, both work at a variety store located at 47 Main Street, Peabody, Massachusetts under the name of "Family Market" which is owned by Mario. At one point, Family Market had been issued a license to operate as an agent for Remesis Quisqueyana, Inc. ("Remesis") and Uno Money Transfers ("UMT"), both of which were money transmittal businesses. Family

2

Market's licenses to operate as an agent for these businesses was terminated/expired on June 30, 2003 for Remesis and on January 6, 2004 for UMT.  Thereafter, Julio continued to operate an unlicenced money transmittal business.

2.    A cooperating witness has stated that Julio instructed him to keep all bank deposits made to an account controlled by Julio and Mario below $10,000 and the Government has obtained documentation that clearly demonstrates that multiple cash deposits into this account were structured by Julio to evade currency reporting requirements.

(B)  <u>Mario Viana</u>

3.    Several confidential witnesses have provided the Government with statements that Mario was involved in smuggling them into the United States from Brazil for a substantial fee of approximately $5,000 to $10,000.  When these confidential witnesses arrived in the United States, they would be required to work for Mario to pay off their smuggling fee debt.  Additionally, a Brazilian National who was smuggled into the United States has stated that he worked for Mario, but that Mario did not pay him because his work was in partial payment of his smuggling fee debt. This cooperating witness further stated that he has seen computer records of how much each person smuggled into the United States from Brazil by Mario owed him for their smuggling fee.  According to this cooperating witness, approximately forty to fifty people owed Mario for their smuggling fee.

4.   The same cooperating witness, who provided information concerning Julio's involvement in the unlicenced money transmittal business, also provided information linking Mario to this same enterprise at the Family Market.

### III. The Bail Reform Act

#### A.   Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e).  The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105.  For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the

4

Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. <u>See</u> <u>United States v. Friedman</u>, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the

Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

(a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(b) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

B. <u>Nature of the Offense and Weight of the Evidence</u>

The maximum penalty with respect to the money laundering offense charged against both Julio and Mario is five years and the maximum penalty for the smuggling of aliens into the United States charge against Mario provides for a maximum penalty of ten years. Although both parties waived their right to a probable cause hearing, I find that the facts set forth in both Criminal Complaints against these two individuals are sufficient to demonstrate that the weight of the evidence against them is substantial.

### C.  Government's Burden

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(2)(A).  The Government must prove that there is no condition or combination of conditions that would reasonably assure the appearance of Julio and Mario as required.

The Government's burden of proof is by a *preponderance of the evidence* that Julio and Mario, if released, would not appear as required.

IV.  Discussion of Whether Detention is Warranted

A.  Julio's History and Characteristics

Julio was born in Brazil on June 6, 1968 and entered the United States illegally in 1990.  Julio remained in the United States without leaving until 2002, when he traveled to Brazil for two months and then illegally re-entered the United States.  In 2004, Julio filed for and was granted a work permit and he is scheduled for an ICE hearing on August 12, 2005, which will determine whether Julio may stay and work in the United States.

Julio's father is deceased, his mother, two siblings, cousins, aunts, uncles and his grandmother reside in Brazil. Six siblings reside in Peabody, Framingham and Milford, Massachusetts.  Four of these siblings are legal permanent residents, one is a United States citizen and the other has a work visa.

Julio was married in 2000 while living in Peabody, Massachusetts and he and his wife have a two and one-half year old daughter.  Julio's wife is a citizen of Brazil, but is a legal permanent resident of the United States.  Julio's wife has traveled to Brazil to visit her family and her last trip was in 2004 when she remained in Brazil for five months.

After Julio illegally entered the United States in 1990, he first lived in Maine for about a year and then moved to Danvers, then Salem and then Peabody, where he has lived for the past several years and where he presently resides with his wife,

daughter and his wife's cousin, who will shortly be returning to Brazil.

For the past month, Julio has worked for his brother, Jose Viana, in a house painting and repair business. Prior to working for his brother, Jose, Julio was unemployed and did not work during the winter months of 2004/2005. Prior to that, Julio worked for his brother, Mario, at Family Market, as a cashier for about five or six years.

Julio owns his current residence, a condominium, in Peabody and an apartment in Brazil.

Julio has a minor criminal record for motor vehicle violations.

B. Mario's History and Characteristics

Mario was born in Brazil in 1965 and illegally entered the United States in 1990. In 1998 or 1999, Mario filed for a Change In Status with ICE and in 2000 or 2001, he was granted a Temporary Employment Visa. In 2001, Mario traveled to Brazil for one week; in 2002, Mario traveled to Brazil for six months (worked on a farm); in July 2002, Mario traveled to Brazil and remained there for two and one-half years. During that period of time, Mario traveled to and from the United States/Brazil on three occasions; and in February 2005, Mario traveled to Brazil for one month. Govt. Ex. 1.

Mario's father is deceased and his mother, two siblings, aunts, uncles and grandmother reside in Brazil. Six siblings

reside in Peabody, Framingham and Milford, Massachusetts.  Four of these siblings are legal permanent residents, one is a United States citizen and the other has a work visa.

Mario was married in 1994 to a Brazilian citizen who is a legal permanent resident of the United States.  Mario and his wife have two children (three year old twins) and they presently reside in Peabody, Massachusetts.  Mario's wife also travels to Brazil to visit her family.

Mario purchased his residence in Salem, Massachusetts in 1998, where he lives with his wife, their two children and four adult renters.  Prior to that, Mario lived in Peabody for two years with his wife, and prior to that they lived at another address in Salem.

Mario has no known criminal record.

On March 25, 2005, Mario was selected for secondary inspection at the Dallas Airport as he attempted to re-enter the United States from Brazil.  On that occasion, it was discovered that Mario had in his possession gemstones which he had failed to declare, numerous documents including deeds with assignments to property in Brazil, some Brazilian documents that did not belong to Mario, but which Mario acknowledged belonged to friends that were illegal aliens.  Govt. Ex. 2.

C.   <u>Whether Julio Poses A Risk Of Flight</u>

Julio faces a maximum of five years incarceration if he is found guilty of the offenses charged in this Complaint.  However, if he is found guilty of these offenses, then he will almost certainly be deported following completion of his sentence. Although Julio has many family ties to the United States, including his wife and child and various siblings, he also has substantial family ties to Brazil where his mother and extended family reside. On one occasion, Julio, as an illegal alien, was able to leave the United States, visit Brazil and then return illegally to the United States.   Therefore, Julio has demonstrated an ability to be able to travel in and out of the United States as an illegal alien. Additionally, there is substantial evidence that Julio's brother Mario, with whom he has worked, has successfully smuggled forty to fifty illegal aliens into the United States from Brazil. Therefore, considering all of these circumstances, I find by a preponderance of the evidence that Julio poses a risk of flight and that there are no conditions or combination of conditions that I can impose that would assure his appearance in this Court as directed.

D.   <u>Whether Mario Poses A Risk Of Flight</u>

Mario has substantial ties to the United States where his wife and twin three year olds reside.  However, Mario has substantial family ties to Brazil where he has visited for extended periods of time on numerous occasions from 2001 to as recent as March 25,

12

2005.  Additionally, there is substantial evidence that Mario is in the business of smuggling illegal aliens into the United States from Brazil and was stopped at the Dulles Airport with others' individuals' travel documents.  Furthermore, if convicted of these charges, Mario also faces almost certain deportation upon completion of his sentence.  Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that Mario poses a risk of flight and that there are no conditions or combination of conditions that I can impose that will assure his appearance as required.

V.    Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.    That Julio Viana and Mario Viana be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.    That Julio Viana and Mario Viana be afforded a reasonable opportunity for private consultation with counsel; and

3.    On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Julio Viana and Mario Viana are detained and confined shall deliver Julio Viana and Mario Viana to

an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).


/s/ Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE

14